# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### NEWNAN DIVISION

NOTORRIS BRAY,

      Plaintiff,

v.

SEJONG GEORGIA, LLC,

      Defendant.

Civil Action File No.

_____

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Notorris Bray ("Plaintiff") files this Complaint alleging that his former employer of nearly fourteen years, Defendant Sejong Georgia, LLC ("Defendant"), denied him a promotion and then terminated him based on discriminatory animus and the desire to retaliate against him, in violation of 28 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*. ("Title VII").

## PRELIMINARY STATEMENT

1. Plaintiff, who is African American, was employed at Defendant's manufacturing facility in LaGrange, Georgia from his hiring in May 2009 until his termination on April 14, 2023.

2. From 2021 to 2023, Plaintiff was repeatedly denied promotion to the position of Production Manager on the basis of his race.

1

3.      Plaintiff was denied promotion to a Production Manager position in spite of the fact that he was highly qualified for the position and had successfully performed the duties of the position.

4.      Defendant had never promoted an African American to management at the plant.

5.      Defendant's refusal to promote Plaintiff due to his race violated Plaintiff's rights under 42 U.S.C. § 1981 and Title VII.

6.      In January 2023, Plaintiff complained to Defendant that Defendant had discriminated against him on the basis of his race.

7.      In retaliation against Plaintiff for his complaints about Defendant's discriminatory employment practices, Defendant terminated Plaintiff in April 2023.

8.      Plaintiff offered a pretextual explanation for the termination, claiming it did not have confidence in Plaintiff's ability to do his job.

9.      In fourteen years of employment, Plaintiff never received a negative performance review or any complaints about his work, and he had been recommended for promotion by several managers.

10.     Defendant terminated Plaintiff for seeking a management position and for complaining when he was denied the position based on race. At the time, Defendant had no Black management employees at the plant.

11.   Defendant's retaliatory termination violated Plaintiff's rights under 42 U.S.C. § 1981 and Title VII.

## PARTIES

12.   Plaintiff Notorris Bray is a resident of Georgia.

13.   Defendant Sejong Georgia, LLC is a limited liability company organized under the laws of Georgia, with a principal office address of 1641 Lukken Industrial Dr. West; LaGrange, Georgia 30240.

14.   Defendant is a manufacturer and supplier of exhaust systems for Kia and Hyundai automobiles.

## JURISDICTION AND VENUE

15.   This Court has subject matter jurisdiction over the present action pursuant to 28 U.S.C. § 1331, as the cause of action arises under Title VII and under 42 U.S.C. § 1981.

16.   Venue is proper in this judicial district under 28 U.S.C. § 1391, as a substantial portion of the events giving rise to each of the claims herein occurred in this judicial district.

## ADMINISTRATIVE PROCEEDINGS

17.   Plaintiff timely filed a charge of discrimination against Defendant with the United States Equal Employment Opportunity Commission ("EEOC").

18.    Plaintiff received a Notice of Right to Sue from the EEOC within the last

ninety (90) days and has complied with all other conditions precedent to the

assertion of his claims within the scope of that charge under Title VII in this

lawsuit.

## FACTUAL ALLEGATIONS

19.    Plaintiff was hired by Defendant in May 2009 as a team leader at

Defendant's manufacturing plant in LaGrange, Georgia.

20.    After approximately four months after being hired, Plaintiff was promoted to

Production Supervisor by then-Production Manager Charlie Detts.

21.    As a Production Supervisor, Plaintiff oversaw the work of roughly 35 people

in the production department.

22.    After several years, Plaintiff was promoted to Senior Supervisor by then-

Vice President Todd Morgan.

23.    As Senior Supervisor, Plaintiff oversaw the work of other supervisors and

ensured that all aspects of the production process ran smoothly.

24.    Plaintiff maintained his Senior Supervisor position until he was terminated.

25.    Throughout his employment with Defendant, Plaintiff maintained an

exemplary work record.

26.    Plaintiff received pay raises each year of his employment by Defendant.

27.    In 2020 and 2021, then-Production Manager Bill Cardwell was away from work due to his medical needs.

28.    In Mr. Cardwell's absence, Plaintiff successfully performed the duties of the Production Manager for approximately six to eight months, including overseeing the work of all supervisors, ensuring that production was coordinated with other activity at the plant, and attending meetings with upper management.

29.    Plaintiff did not receive any negative performance reviews or negative feedback about his performance of the duties of the Production Manager.

30.    Mr. Cardwell passed away on December 5, 2021

31.    Plaintiff sought promotion to the then-vacant position of Production Manager.

32.    At that time, Defendant did not create a formal application process for the position of Production Manager.

33.    Defendant was aware that Plaintiff sought promotion to the position of Production Manager.

34.    Plaintiff was qualified for the position of Production Manager.

35.    Plant Manager Ray Rogers recommended to Defendant's upper management, including its President, Jack Kim, that Plaintiff be hired as Mr. Cardwell's replacement.

36.    Defendant did not promote Plaintiff to the Production Manager position.

37.    In approximately April 2022, Defendant instead hired Todd Yarbrough, a white male, for the Production Manager position.

38.    Rogers explained to Plaintiff that Rogers had been told by management that Plaintiff would never be hired in a management position. Plaintiff hoped that Rogers was wrong.

39.    Mr. Yarbrough quit in approximately September 2022.

40.    Plaintiff again sought promotion to the position of Production Manager.

41.    Defendant did not create a formal application process for the position of Production Manager.

42.    Defendant was aware that Plaintiff sought promotion to the position of Production Manager.

43.    Plant Manager Ray Rogers again recommended to Defendant's upper management, including its President, Jack Kim, that Plaintiff be hired as Production Manager.

44.    Again, Plaintiff was not promoted to the position of Production Manager.

45.    Instead, Defendant in January 2023 promoted Tara Climer, a white female, from her previous position as a front-office production planner to a newly created position of Assistant Production Manager.

46.    Ms. Climer had no experience supervising production employees.

47.    Plaintiff was qualified, through training and experience, for the position of Assistant Production Manager.

48.    Plaintiff was more qualified than Ms. Climer for the position of Assistant Production Manager.

49.    Plaintiff was not given the opportunity to apply for the position of Assistant Production Manager.

50.    Defendant knew that Plaintiff wanted a promotion to a management position and knew that Plaintiff sought the position of Production Manager.

51.    Rather than fill the Production Manager position, however, Defendant instead created the position of Assistant Production Manager to fill duties of the vacant Production Manager position.

52.    Defendant created the Assistant Production Manager position without Plaintiff's knowledge and for the purpose of denying Plaintiff a management position at the company.

53.    Defendant never posted the position of Assistant Production Manager.

54.    Defendant knew that Plaintiff sought a position in management, including the positions of Assistant Production Manager position and Production Manager.

55.    Both were denied to Plaintiff based on race.

56.    The position of Assistant Production Manager was given to the less experienced and less qualified Ms. Climer.

57.    Plaintiff was required to report to the less experienced and less qualified Ms. Climer.

58.    Due to Ms. Climer's inexperience, Plaintiff continued to perform many of the duties of a Production Manager.

59.    Plaintiff complained in January 2023 to Human Resources Manager April Lock that that he reasonably believed that he had been denied promotion to management based on his race, as shown by Defendant's failure to promote him to Production Manager or Assistant Production Manager, and by Defendant's filling the position of Assistant Production Manager (to perform Production Manager duties) with a less qualified white woman. Plaintiff informed Ms. Lock that he believed that he had been discriminated against based on his race and in violation of his civil rights.

60.    In retaliation for his complaints, Plaintiff was terminated on April 14, 2023.

61.    At the time of his termination, Plaintiff had an exemplary work record, with no negative reviews or any issues raised about his performance.

62.    At the time of his termination, Plaintiff was told verbally that Defendant "did not have confidence that he could perform his job functions."

63.    Plaintiff's Separation Notice stated only that Plaintiff was being terminated for "Performance."

64.    Defendant refused to provide any further explanation for his termination.

65.    Plaintiff was terminated in retaliation for his reasonable complaints that

Defendant discriminating against him by refusing to promote him to a management

position.

66.    After Plaintiff's termination, Defendant hired a Korean male with no

experience in production to take the position of Production Manager.

67.    The time period between Plaintiff's complaint of discrimination and the

decision to terminate Plaintiff was less than 3 months.

**COUNT ONE: DISCRIMINATION ON THE BASIS OF RACE**
**(TITLE VII, 42 U.S.C. §2000e *et seq*.)**

68.    Plaintiff incorporates and re-alleges all preceding paragraphs as if set forth

fully herein.

69.    Plaintiff brings this count against Defendant pursuant to Title VII.

70.    As an African American, Plaintiff is a member of a protected class.

71.    At all times from 2021 onward, Plaintiff was qualified, by virtue of his

training and experience, for the position of Production Manager.

72.    Plaintiff successfully performed the duties of the Production Manager for six

to eight months while then-Production Manager Bill Cardwell was out for medical

reasons.

73.    After the passing of Mr. Cardwell, Plaintiff was denied promotion to

Production Manager based on his race.

74.     Instead of promoting Plaintiff, Defendant in March or April 2022 hired a white male, Todd Yarborough, for the Production Manager position.

75.     Yarborough was less qualified than Plaintiff and had not previously been employed by Defendant.

76.     Yarborough quit the position in September 2022.

77.     Plaintiff again requested to be promoted to the position of Production Manager after Yarborough quit.

78.     Instead of promoting Plaintiff to Production Manager, Defendant hired a less qualified white female to perform the duties of Production Manager but under a different title: Assistant Production Manager.

79.     Defendant refused to fill the title of Production Manager, while in fact filling the duties of that position by hiring a less qualified white female under the newly created title Assistant Production Manager.

80.     Defendant refused to fill the title of Production Manager for the purpose of denying the position to Plaintiff.

81.     Plaintiff was denied the positions of Production Manager and Assistant Production Manager due to his race.

82.     Defendant's discriminatory conduct had adverse consequences for Plaintiff.

83.    Defendant's conduct was not motivated by job-related considerations or by business necessity, as Plaintiff was qualified for both the position of Production Manager and the newly created position of Assistant Production Manager.

84.    Rather than promoting Plaintiff to Production Manager, Defendant fired Plaintiff on April 14, 2023.

85.    In denying promotion to and then terminating Plaintiff, Defendant intentionally and maliciously violated Plaintiff's rights under Title VII.

86.    In the alternative, Defendant acted with reckless disregard for Plaintiff's rights.

87.    Plaintiff is entitled to damages including back wages and lost benefits, front pay and/or reinstatement; compensatory damages, including emotional distress, anguish, inconvenience, loss of income, loss of enjoyment of life, humiliation, and other indignities; punitive damages; and attorneys' fees and costs of litigation pursuant to Title VII at 42 U.S.C.A. § 2000e-5 and other applicable law.

88.    Because Defendant acted with intent, malice, or reckless disregard for Plaintiff's rights, Plaintiff is additionally entitled to punitive damages.

**COUNT TWO**
**DISCRIMINATION ON THE BASIS OF RACE**
**(42 U.S.C. 1981)**

89.    Plaintiff incorporates and re-alleges all preceding paragraphs as if set forth fully herein.

90.    Plaintiff brings this count against Defendant pursuant to 42 U.S.C. § 1981.

91.    At all times material to this Complaint, Plaintiff and Defendant were parties to an employment agreement under which Plaintiff worked for Defendant and was compensated by Defendant for his work.

92.    Plaintiff performed all of his contractual obligations.

93.    As a Black male and an African American, Plaintiff is a member of a protected class.

94.    At all times from 2021 onward, Plaintiff was qualified, by virtue of his training and experience, for the position of Production Manager.

95.    Plaintiff successfully performed the duties of the Production Manager for six to eight months while then-Production Manager Bill Cardwell was out for medical reasons.

96.    After the passing of Mr. Cardwell, Plaintiff was denied promotion to Production Manager based on his race.

97.    Instead of promoting Plaintiff, Defendant in March or April 2022 hired a white male, Todd Yarborough, for the Production Manager position.

98.    Yarborough was less qualified than Plaintiff and had not previously been employed by Defendant.

99.    Yarborough quit the position in September 2022.

100.   Plaintiff again requested to be promoted to the position of Production

Manager after Yarborough quit.

101.   Instead of promoting Plaintiff to Production Manager, Defendant hired a less

qualified white female to perform the duties of Production Manager but under a

different title: Assistant Production Manager.

102.   Defendant refused to fill the title of Production Manager, while in fact filling

the duties of that position by hiring a less qualified white female under the newly

created title Assistant Production Manager.

103.   Defendant refused to fill the title of Production Manager for the purpose of

denying the position to Plaintiff.

104.   Plaintiff was denied the position of Production Manager and Assistant

Production Manager based on race.

105.   Defendant's discriminatory conduct had adverse consequences for Plaintiff.

106.   Defendant's conduct was not motivated by job-related considerations or by

business necessity, as Plaintiff was qualified for the position of Production

Manager and the newly titled Assistant Production Manager.

107.   Rather than promoting Plaintiff to Production Manager, Defendant

terminated Plaintiff on April 14, 2023.

108.   In denying promotion to and terminating Plaintiff, Defendant intentionally

and maliciously violated Plaintiff's rights under 42 U.S.C. § 1981.

109.   In the alternative, Defendant acted with reckless disregard for Plaintiff's rights.

110.   By the conduct described above, Defendant intentionally deprived Plaintiff of the rights enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges, of his contractual employment relationship with Defendant, in violation of 42 U.S.C. § 1981.

111.   Plaintiff is entitled to damages including back wages and lost benefits, front pay and/or reinstatement; compensatory damages, including emotional distress, anguish, inconvenience, loss of income, loss of enjoyment of life, humiliation, and other indignities; punitive damages; attorneys' fees; and costs of litigation pursuant to 42 U.S.C. § 1988, and all other relief recoverable under 42 U.S.C. § 1981 and other applicable law.

112.   Because Defendant acted with intent, malice, or reckless disregard for Plaintiff's rights, Plaintiff is additionally entitled to punitive damages under 42 U.S.C. §1981a.

### COUNT THREE: RETALIATION
### (TITLE VII, 42 U.S.C. §2000e *et seq*.)

113.   Plaintiff incorporates and re-alleges all preceding paragraphs as if set forth fully herein.

114.   Plaintiff brings this count against Defendant pursuant to Title VII.

115.   Plaintiff was employed by Defendant beginning in May 2009.

14

116.   Plaintiff was promoted to the role of Production Supervisor in 2009.

117.   Plaintiff was subsequently promoted to the role of Senior Supervisor.

118.   Plaintiff received pay raises each year he was employed by Defendant.

119.   Plaintiff successfully performed the duties of the Production Manager for six to eight months while then-Production Manager Bill Cardwell was out for medical reasons.

120.   In January of 2023, Plaintiff complained to Defendant's HR department about Defendant's discriminatory treatment of him.

121.   Plaintiff's act of complaining to Defendant about Defendant's discriminatory employment practices constitutes protected activity under Title VII.

122.   In retaliation against Plaintiff for his complaints about Defendant's discriminatory employment practices, Defendant terminated Plaintiff on April 14, 2023.

123.   Defendant stated that the company had no confidence in Plaintiff's ability to perform his job.

124.   Defendant's justification of Plaintiff's termination is patently pretextual.

125.   Defendant's explanation for its termination of Plaintiff is inconsistent with Plaintiff's record as an employee.

126.   In his nearly fourteen years of employment, Defendant had received no negative job reviews and no complaints about the performance of his job.

127.   During Plaintiff's employment, Plaintiff had performed his job duties exceptionally well and also had performed the duties of Production Manager for six to eight months without any negative job reviews or complaints about his performance.

128.   During Plaintiff's employment, Plaintiff's supervisors recommended Plaintiff for promotion.

129.   During Plaintiff's employment, Plaintiff regularly received pay increases.

130.   But for Plaintiff's opposition to the discriminatory treatment he suffered based on race, his employment would not have ended.

131.   Defendant's termination of Plaintiff constitutes retaliation under Title VII.

132.   Defendant's actions were committed with reckless disregard for his right to be free from retaliation for opposition to discriminatory employment practices.

133.   As a direct result of Defendants' unlawful retaliation, Plaintiff has suffered mental and emotional distress in an amount to be determined at trial by the enlightened conscience of an impartial jury. Plaintiff has also suffered lost wages and the benefits of employment, which he seeks to recover from Defendants.

134.   As a direct result of Defendant's unlawful retaliation, Plaintiff suffered lost wages, mental and emotional distress, humiliation, outrage, damage to his reputation, and the deprivation of his rights under federal law, and he is entitled to compensatory and punitive damages.

135.   Plaintiff is entitled to damages including back wages and lost benefits, front pay and/or reinstatement; compensatory damages, including emotional distress, anguish, inconvenience, loss of income, loss of enjoyment of life, humiliation, and other indignities; punitive damages; attorneys' fees; and costs of litigation pursuant to Title VII at 42 U.S.C.A. § 2000e-5, and other applicable law.

### COUNT FOUR: RETALIATION
### 42 U.S.C. 1981

136.   Plaintiff incorporates and re-alleges all preceding paragraphs as if set forth fully herein.

137.   Plaintiff brings this count against Defendant pursuant to 42 U.S.C. § 1981.

138.   At all times material to this Complaint, Plaintiff and Defendant were parties to an employment agreement under which Plaintiff worked for Defendant and was compensated by Defendant for his work.

139.   Plaintiff performed all of his contractual obligations.

140.   Plaintiff was employed by Defendant beginning in May 2009.

141.   Plaintiff was promoted to the role of Production Supervisor in 2009.

142.   Plaintiff was subsequently promoted to the role of Senior Supervisor.

143.   Plaintiff received pay raises each year he was employed by Defendant.

144.   Plaintiff successfully performed the duties of the Production Manager for six to eight months while then-Production Manager Bill Cardwell was out for medical reasons.

145.   In January of 2023, Plaintiff complained to Defendant's HR department about Defendant's discriminatory treatment of him.

146.   Plaintiff's act of complaining to Defendant about Defendant's discriminatory employment practices constitutes protected activity under 42 U.S.C. § 1981.

147.   In retaliation against Plaintiff for his complaints about Defendant's discriminatory employment practices, Defendant terminated Plaintiff on April 14, 2023.

148.   Defendant stated that the company had no confidence in Plaintiff's ability to perform his job.

149.   Defendant justification of Plaintiff's termination is patently pretextual.

150.   Defendant's explanation for its termination of Plaintiff is inconsistent with Plaintiff's record as an employee.

151.   In his nearly fourteen years of employment, Defendant had received no negative job reviews and no complaints about the performance of his job.

152.   During Plaintiff's employment, Plaintiff had performed his job duties exceptionally well and also performed the duties of Production Manager for six to eight months without any negative job reviews or complaints about his performance.

153.   During Plaintiff's employment, Plaintiff's supervisors recommended Plaintiff for promotion.

154.   During Plaintiff's employment, Plaintiff regularly received pay increases.

155.   But for Plaintiff's opposition to the discriminatory treatment he suffered based on race, his employment would not have ended.

156.   Defendant's termination of Plaintiff constitutes retaliation under Title VII.

157.   Defendant's actions were committed with reckless disregard for his right to be free from retaliation for opposition to discriminatory practices and in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

158.   As a direct result of Defendant's unlawful retaliation, Plaintiff has suffered mental and emotional distress in an amount to be determined at trial by the enlightened conscience of an impartial jury. Plaintiff has also suffered lost wages and the benefits of employment, which he seeks to recover from Defendants.

159.   As a direct result of Defendant's unlawful retaliation, Plaintiff suffered lost wages, mental and emotional distress, humiliation, outrage, damage to his reputation, and the deprivation of his rights under federal law, and he is entitled to compensatory and punitive damages.

160.   Plaintiff is entitled to damages including back wages and lost benefits, front pay and/or reinstatement; compensatory damages, including emotional distress, anguish, inconvenience, loss of income, loss of enjoyment of life, humiliation, and other indignities; punitive damages; attorneys' fees; and costs of litigation pursuant

to 42 U.S.C. § 1988, and all other relief recoverable under 42 U.S.C. § 1981 and

other applicable law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Notorris Bray demands a trial by jury and requests

that this Court grant the following relief against Defendant Sejong Georgia, LLC:

A.   An award of compensatory damages, back wages, and lost benefits to

Plaintiff;

B.   An award of equitable monetary relief to Plaintiff;

C.   That the Court award punitive damages against Defendant in an

amount to be determined by the trier of fact;

D.   An award of pre- and post-judgment interest to Plaintiff;

E.   An award of costs and expenses of this action together with

reasonable attorneys' and expert fees to Plaintiff; and

F.   Such other and further relief as this Court deems just and proper.

Respectfully submitted this 10th day of July 2024.

*/s/ Ricardo Gilb*
Ricardo Gilb
Ga Bar 564635
Christopher B. Hall
Ga Bar 318380

**Hall & Lampros, LLP**
300 Galleria Parkway
Suite 1150
Atlanta, GA 30339

(404) 876-8100 telephone
(404) 876-3477 facsimile
chall@hallandlampros.com
ricardo@hallandlampros.com

*Attorneys for Plaintiff*